IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MERCHANTS BONDING COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 17-0365 |
| | * | |
| CERTIFIED MAINTENANCE COMPANY, INC. et al. | * | |
| | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION**

Pending is Plaintiff Merchants Bonding Company's Motion for Reconsideration (ECF No. 11) and its Motion for Extension of Time (ECF No. 12). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons that follow, Plaintiff's Motion for Reconsideration is granted and the Motion for Extension of Time is denied as moot.

**I.    BACKGROUND**

On February 9, 2017, Plaintiff Merchants Bonding Company filed a Complaint against Defendants Certified Maintenance Company, Inc., Mehdi Naimi-Ezami, and Lynette Naimi-Ezami seeking reimbursement for losses and damages it allegedly incurred as a result of issuing surety bonds for Certified Maintenance Company on construction projects in Maryland. Mehdi and Lynette Naimi-Ezami (the "Individual Defendants") are the principals of Certified Maintenance Company.

Plaintiff served Certified Maintenance Company through the Maryland State Department of Assessments and Taxation ("SDAT") on February 21, 2017. *See* ECF No. 5. As explained below, serving the Individual Defendants proved to be rather difficult. Ultimately, Plaintiff served the Individual Defendants by leaving a copy of the Summons and Complaint with the manager of the Individual Defendants' private mailbox located in Florida pursuant to one of Florida's substitute service provisions—Fla. Stat. Ann. § 48.031(6).

The Defendants' opportunity to respond to the Complaint came and went and so, on April 18, 2017, Plaintiff moved for a clerk's entry of default against all of the Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. *See* ECF No. 9. The Court granted this motion in part. *See* ECF No. 10. It granted Plaintiff's motion with respect to Certified Maintenance Company, but denied it with respect to the Individual Defendants for Plaintiff's failure to provide evidence that Plaintiff had actually meet Fla. Stat. Ann. § 48.031's requirements for proper substitute service of process.

On May 9, 2017, Plaintiff filed a motion requesting that the Court reconsider its Order denying Plaintiff's motion for entry of default judgment with respect to the Individual Defendants. *See* ECF No. 11. Shortly thereafter, Plaintiff filed a motion for extension of time to serve the Individual Defendants. *See* ECF No. 12. Plaintiff filed the latter motion to ensure that it would have time to serve the Individual Defendants in the event the Court denied Plaintiff's motion to reconsider.

## II. STANDARD OF REVIEW

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Rule 55

establishes a two-step process for obtaining a default judgment: the clerk's entry of default followed by the entry of default judgment. *See Wilson v. Turner*, No. ELH-13-3497, 2014 WL 4426126, at *1 (D. Md. Sept. 2, 2014); 10A C. Wright & A. Miller, Federal Practice & Procedure § 2682 (4th ed.) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Entry of default is thus "merely 'an interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b).'" *Phillips v. Weiner*, 103 F.R.D. 177, 179 (D. Me. 1984) (quoting 10 C. Wright, A. Miller & Kane, Federal Practice and Procedure § 2692 at 465 (2d ed. 1983)).

Motions for reconsideration of an interlocutory order are governed by Federal Rule of Civil Procedure 54(b)[1] and "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Resolution of such a motion is "committed to the discretion of the district court" and the goal "is to reach the correct judgment under law." *Id.* at 515. While the precise standard governing a motion for reconsideration of an interlocutory order is unclear, courts in this circuit recognize that Rule 59(e) provides sound guidance. *Butler v. Directsat USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015) (noting that courts frequently look to the standards articulated in Rules 59(a) and 60(b) "for guidance in considering such motions"). Pursuant to Rule 59(e), a district court may alter or amend a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law

---

[1] Rule 54(b) provides, in pertinent part:

> [A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

3

[or] prevent manifest injustice." *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citations and internal quotation marks omitted). With these principles in mind, the Court turns to Plaintiff's motion.

## III.   ANALYSIS

Plaintiff believes that this Court applied the incorrect standard when it held that Plaintiff failed to effectuate service properly upon the Individual Defendants. It argues that the Court should have accepted Plaintiff's signed returns of service as *prima facie* evidence of valid service without requiring Plaintiff to provide additional evidence that it complied with Florida's substitute service provision. *See* ECF No. 11 at 3. Alternatively, Plaintiff argues for the first time that the Individual Defendants contractually waived service and personal jurisdiction pursuant to the indemnity agreement that they had executed with Plaintiff in connection with the provision of surety bonds for Defendants' Maryland construction projects. *Id.*

As the Court explained above and in its April 25th Memorandum Opinion and Order, Plaintiff attempted to effectuate service on the Individual Defendants under Section 48.031(6) of the Florida Statutes, which reads:

> If the only address for a person to be served which is discoverable through public records is a private mailbox, a virtual office, or an executive office or mini suite, substitute service may be made by leaving a copy of the process with the person in charge of the private mailbox, virtual office, or executive office or mini suite, but only if the process server determines that the person to be served maintains a mailbox, a virtual office, or an executive office or mini suite at that location.

Contrary to Plaintiff's position, this statute requires more than a signed return of service to prove that a plaintiff has complied with this substitute service provision. Under Florida law, Section 48.0361 "only permits substitute service at a private mailbox if (1) it is the *only* address discoverable through the public records, and (2) the process server determines that the person to be served maintains a mailbox at that location." *Clauro Enterprises, Inc. v. Aragon Galiano*

4

*Holdings, LLC*, 16 So. 3d 1009, 1012 (Fla. Dist. Ct. App. 2009) (emphasis in original) (citations omitted). Both requirements must be met. *Id.* Florida law also makes clear "[a]n affidavit [of service] which merely alleges that the service of process statute has been complied with is insufficient to meet the proponent's initial burden of establishing proper service." *Id.* (quoting *York Commc'ns, Inc. v. Furst Group, Inc.*, 724 So. 2d 678, 679 (Fla. Dist. Ct. App. 1999)) (internal quotation marks omitted); *cf. Johnston v. Halliday*, 516 So. 2d 84, 85 (Fla. Dist. Ct. App. 1987) (holding that a return of service merely stating that substituted service was effected on the defendant's son who was "of suitable age and discretion" was insufficient absent facts establishing that the process server complied with specific requirements for substituted service). Thus, in this context, Plaintiff was required to produce evidence that it had met Section 48.031(6)'s statutory requirements to demonstrate that it effectuated proper service of process. This Plaintiff did not do. Accordingly, the Court did not err by requiring Plaintiff to provide evidence to ensure it had complied with Florida's applicable substitute service provision.

Plaintiff's argument that the Individual Defendants had waived service of process is equally unavailing. The indemnity agreement states that the Individual Defendants agreed to "waive *personal* service of any and all process." ECF No. 11-1 at 5 (emphasis added). The waiver clause does not address substitute service of process nor does Plaintiff argue that the Individual Defendants waived substitute service of process under the indemnity agreement. Thus, the clause Plaintiff cites is of little help in this context.

Nonetheless, Plaintiff has provided additional information in its motion for reconsideration to demonstrate that it met Section 48.031(6)'s statutory requirements. Specifically, Plaintiff attached to the motion the affidavit of its attorney, Michael Stover, which explains Plaintiff's efforts to effectuate service of process on the Individual Defendants. *See* ECF

5

No. 11-2. Stover affirms that Plaintiff employed numerous process servers who made dozens of attempts to serve the Individual Defendants at multiple locations. For example, Plaintiff learned of three possible Maryland addresses for the Individual Defendants in Huntingtown and Prince Frederick. *Id.* at 2–3. Process servers were dispatched to each address where they discovered that the Individual Defendants did not live at any of the residences. *Id.*

Plaintiff then learned that the Individual Defendants may have relocated to Florida and discovered two potential addresses for the Individual Defendants in that state. Plaintiff again dispatched a process server to each location and, again, learned that the Individual Defendants did not actually reside there. Finally, Plaintiff learned that the Individual Defendants may own a private mailbox located in Stuart, Florida. A process server arrived at the store and spoke with the store's manager who confirmed that Individual Defendants pay for a private mailbox at that location. The manager also agreed to accept service on the Individual Defendants' behalf. *See* ECF No. 11-2 at 8.

Thus, Stover's affidavit confirms that the process server verified that the Individual Defendants maintained a mailbox at the Stuart, Florida location; that the private mailbox "is the only address discoverable through the public records"; and that the process server left "a copy of the process with the person in charge of the private mailbox." Fla. Stat. Ann. § 48.031(6). Accordingly, and because granting Plaintiff's motion for clerk's entry of default as to the Individual Defendants is "the correct judgment under law," *Am. Canoe Ass'n*, 326 F.3d at 515, Plaintiff's motion for reconsideration is granted. For this reason, Plaintiff's motion for extension of time is denied as moot. A separate Order will follow.

| 6/2/2017 | /S/ |
|---|---|
| Date | Paula Xinis<br>United States District Judge |